No. 25-146

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

NETCHOICE, LLC,
*Plaintiff*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF CALIFORNIA,
*Defendant*.
_____

**On Appeal from the United States District Court
for the Northern District of California**
No. 5:24-cv-07885-EJD
The Honorable Edward J. Davila
_____

**OPPOSITION TO APPELLANT'S
MOTION FOR AN INJUNCTION PENDING APPEAL**
_____

ROB BONTA
  *Attorney General of California*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
LARA HADDAD
  *Supervising Deputy Attorney
  General*

JENNIFER E. ROSENBERG
SHIWON CHOE
CHRISTOPHER J. KISSEL
  *Deputy Attorneys General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6388
Christopher.Kissel@doj.ca.gov
  *Attorneys for Defendant*

January 13, 2025

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................ 1

Background ................................................................................. 2

Legal Standard ........................................................................... 5

    I.      Plaintiff Fails to Show That SB976's Addictive Feed Provisions Have Any First Amendment Impact ...................... 6

           A.     Facial Challenges Confront a High Bar. ......................... 6

           B.     Plaintiff's Facial Challenge Fails on the Current Record. ........................................................................... 7

           C.     Plaintiff's Argument Misreads Supreme Court Precedent. ....................................................................... 9

    II.     Plaintiff Has Not Shown That SB976 Is Unconstitutional Under Any Level of Scrutiny ................................................. 12

           A.     SB976's Default Settings Do Not Violate the First Amendment. .................................................................. 12

           B.     Plaintiff's "Content-Based" and "Speaker-Based" Arguments Fail. .............................................................. 13

           C.     SB976 Satisfies Intermediate or Strict First Amendment Scrutiny. ................................................... 16

           D.     This Case is Distinguishable from Other Recent District Court Decisions. ................................................ 19

    III.    Plaintiff Lacks Associational Standing to Pursue an As-Applied First Amendment Claim ........................................... 19

    IV.    Plaintiff Fails to Establish That The Remaining Injunction Factors Warrant Extraordinary Relief .................................... 21

Conclusion ................................................................................. 23

Certificate of Compliance .......................................................... 24

Certificate of Service ................................................................. 25

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*
  627 F.3d 547 (5th Cir. 2010) ....................................................................21

*Ass'n of Christian Sch. Int'l v. Stearns*
  678 F. Supp. 2d 980 (C.D. Cal. 2008) ......................................................20

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*
  457 U.S. 853 (1982) ....................................................................................8

*Borrero v. United Healthcare of N.Y., Inc.*
  610 F.3d 1296 (11th Cir. 2010) ................................................................21

*Brown v. Entertainment Merchants Association*
  564 U.S. 786 (2011) .............................................................11, 16, 18, 19

*Children's Health Def. v. Meta Platforms, Inc.*
  112 F.4th 742 (9th Cir. 2024) ...................................................................10

*DISH Network Corp. v. FCC*
  653 F.3d 771 (9th Cir. 2011) ....................................................................22

*Doe v. Reed*
  561 U.S. 186 (2010) ..................................................................................21

*Doe v. Trump*
  957 F.3d 1050 (9th Cir. 2020) ....................................................................5

*FCC v. Pacifica Found.*
  438 U.S. 726 (1978) ..................................................................................11

*Feldman v. Ariz. Sec'y of State's Off.*
  843 F.3d 366 (9th Cir. 2016) ......................................................................6

*Freedom Holdings, Inc. v. Spitzer*
  408 F.3d 112 (2d Cir. 2005) .....................................................................22

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Goldie's Bookstore, Inc. v. Super. Ct.*
739 F.2d 466 (9th Cir. 1984) ....................................................22

*Hill v. Colorado*
530 U.S. 703 (2000)...............................................................13

*HomeAway.com, Inc. v. City of Santa Monica*
918 F.3d 676 (9th Cir. 2019) .....................................................8

*Hoxworth v. Blinder, Robinson & Co.*
903 F.2d 186 (3d Cir. 1990) ....................................................22

*Hoye v. City of Oakland*
653 F.3d 835 (9th Cir. 2011) ...................................................20

*Hunt v. Wash. State Apple Adver. Comm'n*
432 U.S. 333 (1977)...............................................................20

*LA All. for Hum. Rts. v. County of L.A.*
14 F.4th 947 (9th Cir. 2021) ....................................................19

*Lewis v. Andes*
95 F.4th 1166 (9th Cir. 2024) ............................................13, 17

*Moody v. NetChoice, LLC*
603 U.S. 707 (2024)..........................................................*passim*

*N. Plains Res. Council v. U.S. Army Corps of Eng'rs*
460 F. Supp. 3d 1030 (D. Mont. 2020)......................................22

*Nat'l Inst. of Family & Life Advocates v. Becerra*
585 U.S. 755 (2018)...............................................................15

*NetChoice, LLC v. Bonta*
113 F.4th 1101 (9th Cir. 2024) ..................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page**

*NetChoice, LLC v. Fitch*
    No. CV 24-170-HSO (BWR), 2024 WL 3276409 (S.D. Miss.
    July 1, 2024)......................................................................................19

*NetChoice, LLC v. Griffin*
    No. CV 23-05105, 2023 WL 5660155 (W.D. Ark. Aug. 31,
    2023) ..................................................................................................19

*NetChoice, LLC v. Reyes*
    No. 2:23-cv-00911-RJS-CMR, 2024 WL 4135626, at *3 (D.
    Utah Sept. 10, 2024) ........................................................................19

*NetChoice, LLC v. Yost*
    716 F.Supp.3d 539 (S.D. Ohio 2024) ..............................................19

*Nken v. Holder*
    556 U.S. 418 (2009)...........................................................................5

*Ohio Citizens for Responsible Energy, Inc. v. NRC*
    479 U.S. 1312 (1986) ........................................................................5

*Project Veritas v. Schmidt*
    No. 22-35271, 2025 WL 37879 (9th Cir. Jan. 7, 2025)...............*passim*

*Turner Broad. Sys., Inc. v. FCC*
    512 U.S. 622 (1994)..........................................................................15

*United States v. O'Brien*
    391 U.S. 367 (1968)..........................................................................20

*United States v. Playboy Ent. Grp., Inc.*
    529 U.S. 803 (2000)..........................................................................17

*United States v. Williams*
    553 U.S. 285 (2008)............................................................................8

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*Warth v. Seldin*
    422 U.S. 490 (1975)...................................................................20

*Wash. State Grange v. Wash. State Republican Party*
    552 U.S. 442 (2008)...................................................................7

*Williams-Yulee v. Fla. Bar*
    575 U.S. 433 (2015).......................................................16, 18, 19

*Winter v. NRDC*
    555 U.S. 7 (2008).........................................................................5

**STATUTES**

California Business and Professions Code
    § 22675.........................................................................................14

California Health and Safety Code
    § 27000.5............................................................................3, 4, 14
    § 27001 .........................................................................................3
    § 27002 ...........................................................................4, 12, 13

**CONSTITUTIONAL PROVISIONS**

First Amendment........................................................................*passim*

v

## INTRODUCTION

Plaintiff asks this Court to enjoin two parts of the Protecting Our Kids From Social Media Addiction Act (Senate Bill No. 976, or SB976) on an expedited basis. One part limits internet companies' ability to provide minors with addictive feeds—where a platform recommends, selects, or prioritizes material to a user based on tracked information about the user. The other creates certain default settings, which may be overridden with parental consent, on platforms that significantly feature addictive feeds. The district court declined to preliminarily enjoin those provisions, concluding that Plaintiff—on a thin record, at a very early stage in the case—failed to meet the stringent burden of showing that the provisions are likely facially unconstitutional. Plaintiff offers this Court no reason to second-guess that fact-bound, interim conclusion; indeed, neither Plaintiff's motion for an injunction pending appeal to the district court, nor the instant motion, addresses the record's many deficiencies.

Rather than confront or even acknowledge its fact-intensive burden—or, alternatively, pursue discovery to develop the record—Plaintiff urges this Court to conclude as a legal matter that any restrictions on platforms' "personalized feeds" or requirements of parental consent are either per se unconstitutional or subject to the strictest constitutional scrutiny. But its argument misunderstands Supreme Court precedent and should be rejected.

1

Even if Plaintiff had met its burden of showing that the challenged provisions of SB976 implicate the First Amendment, those provisions are at most subject to intermediate scrutiny and are constitutional. They pursue a compelling interest— the physical and mental health of children and teens—while focusing narrowly on features that cause children and teens harm. The First Amendment does not forbid using content-neutral means to regulate harmful conduct that has, at most, an incidental relationship to expression.

Similar problems plague Plaintiff's as-applied challenge. The district court correctly concluded that Plaintiff fails to clearly show associational standing to assert an as-applied First Amendment claim for its members because the fact-intensive nature of such a claim requires each member's individual participation in the case. Because each member's feeds work differently, SB976 will not affect them identically—requiring Plaintiff to support any as-applied claim with individualized evidence. That it must do so precludes associational standing, and this Court should deny Plaintiff's motion.

## BACKGROUND

The California Legislature passed SB976 to address harms to children and teens caused by addictive features of online platforms. An estimated 19 percent of teens use the internet to a degree that it interferes with schoolwork, socializing, physical activity, and/or sleep. Ex. 1 ¶ 33. Over a third of a nationally

2

representative sample of girls aged 11-15 described their own use of social media as an addiction. *Id.* ¶ 34. The more excess time children and teens spend online, the more they experience poor sleep, sedentary behaviors, and other health and behavioral issues. *Id.* ¶ 55; Ex. 2 ¶¶ 20, 30, 36, 37, 38-47.

Meanwhile, internet companies continue to develop features to maximize users' time online. Ex. 3 ¶¶ 34, 37. Those features include addictive feeds that monitor users and utilize algorithms to serve users material based on their actions. *Id.* ¶¶ 18, 23; Ex. 1 ¶ 60. The features accomplish their goal. One study estimated that close to a third of the time users spend on social media is the result of habit or lack of self-control rather than a genuine desire to engage. Ex. 2 ¶ 45.

Children and teens have less-developed executive functioning and impulse control and thus are particularly vulnerable to those features' effects. Ex. 1 ¶¶ 50, 54; Ex. 3 ¶ 49. In passing SB976, the Legislature expressly set out to address the harm caused by such features to minors. SB976 § 1. As relevant here, SB976 limits any "internet website, online service, online application, or mobile application," with exceptions, from providing an "addictive feed" to a minor unless a parent or guardian consents. §§ 27000.5(b), 27001(a)(1). [1] An "addictive feed" is a feed comprising material created or shared by other users, where that material is "recommended, selected, or prioritized" based on information either provided by

---

[1] All citations are to the California Health and Safety Code unless noted.

the user or gleaned from monitoring their online activity. § 27000.5(a). The

definition excludes, *inter alia*, feeds of material that a user searches for,

§ 27000.5(a)(2), and material from creators whose content the user requests,

§ 27000.5(a)(4).

SB976 also allows parents to limit their children's ability to view the number

of likes and other feedback within an addictive feed and to set their children's

accounts to private mode. § 27002(b)(1)-(5). Because SB976's priority is

protecting children, those requirements are enabled by default. *Id.*

On November 12, 2024—two months after SB976 was enacted and seven

weeks before it was to take effect—Plaintiff filed this case and moved for a

preliminary injunction. After a hearing, the district court concluded that Plaintiff

had not shown a likelihood of success on its facial claims that SB976's addictive-

feed, feedback, and privacy-mode provisions violate the First Amendment—

largely because Plaintiff failed to present a factual record sufficient to show that

SB976's addictive feed provisions trigger First Amendment scrutiny. Order 14-22,

28-29. The district court also rejected Plaintiff's as-applied claim, concluding that

the fact-intensive claim required "deep factual inquiries into how a particular social

media feed works" and thus required participation from Plaintiff's members, each

of whom (presumably) use addictive feeds that operate differently. *Id.* at 31-32.

Plaintiff then moved for an injunction pending appeal in the district court. The

4

district court granted a limited injunction with the caveat that it was "only appropriate to the extent it allows the Ninth Circuit time to consider whether to grant its own injunction pending appeal." Ex. G 4. The court emphasized its adherence to its previous conclusion that Plaintiff had not made a "showing on the current record" that the provisions it challenges here are unconstitutional. *Id.*

## LEGAL STANDARD

An injunction is an "extraordinary remedy"; Plaintiff must make a "clear showing that [it] is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). The case Plaintiff cites for the standard governing its motion—*Doe v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020)—concerned a motion to *stay* an injunction, not to *enter* one. Mot. 6-7. That difference matters. "A stay 'simply suspend[s] judicial alteration of the status quo,' while injunctive relief 'grants judicial intervention that has been withheld by lower courts.'" *Nken v. Holder*, 556 U.S. 418, 429 (2009) (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)). Courts thus take extra care in granting an injunction pending appeal. *See Ohio Citizens*, 479 U.S. at 1313 ("the legal rights at issue" must be "indisputably clear").

Plaintiff has not established that its entitlement to an injunction pending appeal, for the same reasons the district court denied a preliminary injunction: Plaintiff has not demonstrated that it is likely to succeed on the merits on the

current record, it does not face irreparable harm while this appeal is pending, and the equities and public interest favor allowing the challenged provisions of SB976 to go into effect. *See Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 396 (9th Cir. 2016) (standard for injunction pending appeal is "similar" to preliminary injunction).

## I.   PLAINTIFF FAILS TO SHOW THAT SB976'S ADDICTIVE FEED PROVISIONS HAVE ANY FIRST AMENDMENT IMPACT

### A.   Facial Challenges Confront a High Bar.

Facial First Amendment challenges are "hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). Plaintiff must show that the law's "unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 724. It is a two-part burden. First, Plaintiff must provide a factual record sufficient to allow the Court to "determine [the] law's full set of applications," cataloging "[w]hat activities, by what actors" the law regulates. *Id.* at 718, 724. Here, that means surveying an "ever-growing number of apps, services, functionalities, and methods for communication and connection." *Id.* at 725. Second, Plaintiff must produce a record that allows the court "to decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Id.* That includes showing that (1) there are more-than-incidental impacts on speech, such that First Amendment scrutiny is triggered; and (2) the law is likely to fail such scrutiny. *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1117, 1123 (9th Cir. 2024).

Identifying a law's full set of applications and demonstrating the constitutionality of each is a "rigorous" undertaking—particularly in a case involving potential applications to countless platforms and functions. *Moody*, 603 U.S. at 723; *see also id.* at 745 (Barrett, J., concurring) ("[D]ealing with a broad swath of varied platforms and functions in a facial challenge strikes me as a daunting, if not impossible, task."). That is by design. "Facial challenges are disfavored" because they "threaten to short circuit the democratic process." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

**B.     Plaintiff's Facial Challenge Fails on the Current Record.**

The district court correctly concluded that Plaintiff failed to produce a record sufficient to satisfy that stringent facial standard. Plaintiff has never attempted, below or here, to identify the full range of SB976's applications. At most, it asks the Court to focus on two platforms' purportedly impacted features: Facebook's News Feed and YouTube's homepage. Mot. 9. But those features do not comprise "the full range of activities the law[] cover[s]." *Moody*, 603 U.S. at 725. As the district court recognized, Plaintiff was required to show, "at a minimum," "that most feeds contain expressive elements," yet failed to "provide[] the kind of wide-ranging record on the entire spectrum of personalized feeds in existence that would be necessary to make that showing." Order 18 n.4. "[I]t is impossible to determine whether a statute reaches too far without first knowing what the statute covers."

7

*United States v. Williams*, 553 U.S. 285, 293 (2008); *see also Moody*, 603 U.S. at 787 (Alito, J., concurring) ("It is a mystery how NetChoice could expect to prevail on a facial challenge without candidly disclosing the platforms that it thinks the challenged laws reach[.]").

Nor has Plaintiff shown how each of SB976's applications affect expressive activity. *See Moody*, 603 U.S. at 725; *see also HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019). Plaintiff must provide enough factual matter for a court to determine whether SB976's alleged impacts on speech are unconstitutional on the whole based on its impacts on each function of each platform. *See HomeAway.com*, 918 F.3d at 685. SB976 does not impact expression because it does not restrict expressive editorial choices. *See* Order 19-21. But Plaintiff has not furnished a record sufficient to enable a court to even decide that question.

Because Plaintiff failed to create a sufficient record, it is irrelevant that it raises the constitutional rights of its members' users, because its own claim cannot go forward if it has not shown that SB976 impacts expressive activity. *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) ("[T]he right to receive ideas follows ineluctably from the *sender's* First Amendment right to send them[.]") (emphasis added).

8

### C.   Plaintiff's Argument Misreads Supreme Court Precedent.

To circumvent the rigorous facial standard, Plaintiff plays down its sparse record and argues that *Moody* established as a legal matter that "personalized feeds" always trigger First Amendment scrutiny. *E.g.*, Mot. 13. But *Moody* was unanimous in rejecting that view: The Court did *not* rule that restrictions on personalized feeds always trigger First Amendment scrutiny, nor can a plaintiff short-circuit the facial inquiry by making that argument. *Moody*, 603 U.S. at 736 n.5 (for five-Justice majority); *id.* at 748 (Jackson, J., concurring) ("[C]ourts must make sure they carefully parse not only what entities are regulated, but how the regulated activities *actually function*[.]"); *id.* at 769 (Alito, J., concurring) (for remaining three Justices) ("[I]t is impossible to determine whether [a law is] unconstitutional in all [its] applications without surveying those applications."). The Court went on to analyze a specific Texas law as applied to two platforms, but only to ensure that the lower courts did not repeat certain errors on remand. *Id.* at 726-27. It cabined its analysis to those platforms and their content moderation policies, explaining that it could not "undertake the needed [facial] inquiries" because "the record," as here, was "underdeveloped." *Id.* at 726.

Plaintiff nonetheless reads the Court's opinion for the sweeping rule that all personalized feeds always implicate the First Amendment. It argues, for example, that the Supreme Court held that "'deci[sions]' about 'which third-party

9

content . . . [to] display, or how the display will be ordered and organized,' are 'expressive choices' that 'receive First Amendment protection.'" Mot. 8 (quoting *Moody*, 603 U.S. at 740). But the Court actually said something far more narrow: "When *[Facebook and YouTube] use their Standards and Guidelines* to decide which third-party content those feeds will display, or how the display will be ordered and organized, they are making expressive choices." *Moody*, 603 U.S. at 740 (emphasis added); *see also Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 759 (9th Cir. 2024). The Court's discussion addressed the way in which that law would require two specific platforms to display material that violated their content moderation policies—in other words, to display "messages and videos that the platforms disfavor." *Moody*, 603 U.S. at 731, 735. The quoted passage has nothing to say about a law that, like SB976, limits websites' use of certain features vis-a-vis minors but does *not* affect content moderation or other "expressive choices" platforms make. *Id.* at 740.

Plaintiff likewise selectively quotes other *Moody* passages to support its broad argument. *Compare* Mot. 8 ("[T]he First Amendment protects 'compiling and curating' protected speech") *with Moody*, 603 U.S. at 710-11 ("[T]he First Amendment offers protection when an entity engaged in compiling and curating others' speech into an expressive product of its own *is directed to accommodate messages it would prefer to exclude*.") (emphasis added). And it distorts passages

10

where the Court described how Facebook and YouTube operate into categorical pronouncements about the expressiveness of the platforms' conduct. *Compare* Mot. 9-10 ("'personalized' or 'individualized' feeds are 'expressive'") *with Moody*, 603 U.S. at 734 ("[W]henever a user signs on, Facebook delivers a personalized collection of those stories."); *id.* ("And any person opening the [YouTube] website or mobile app receives an individualized list of video recommendations.").

Plaintiff similarly misreads *Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011), claiming *Brown* stands for a rule that parental consent requirements are per se unconstitutional. Mot. 7-8. It does not. *Brown* explained that the government lacks a "free-floating" power to "prevent children from hearing or saying anything without their parents' prior consent." 564 U.S. at 794, 795 n.3. Here, the State does not invoke such power. *Brown* concerned a law that explicitly and intentionally restricted minors' ability to access specific content without parental consent, *see* 564 U.S. at 789—a far cry from SB976, which imposes no content restrictions. And if *Brown* stood for a rule that states cannot account for minors' particular vulnerabilities when they legislate, it would run headlong into other Supreme Court precedent. *See*, *e.g.*, *FCC v. Pacifica Found.*, 438 U.S. 726, 750 (1978) ("The ease with which children may obtain access to broadcast material, coupled with the concerns recognized in *Ginsberg* [*v. New*

11

*York*, 390 U.S. 629 (1968)], amply justify special treatment of indecent broadcasting.").

## II.   PLAINTIFF HAS NOT SHOWN THAT SB976 IS UNCONSTITUTIONAL UNDER ANY LEVEL OF SCRUTINY

### A.   SB976's Default Settings Do Not Violate the First Amendment.

Because Plaintiff failed to produce a sufficient record to demonstrate that the addictive feeds covered by SB976 are expressive, section 27002(b)(2) and (4)'s default settings for those feeds also do not implicate the First Amendment, and the district court correctly declined to enjoin them. Order 15-22. Indeed, Plaintiff provides no authority that supports doing so. Mot. 13.

Nor does Plaintiff raise a cognizable argument for enjoining section 27002(b)(3)'s default setting requirement restricting display of the number—but not the content—of likes and other forms of feedback on posts within an addictive feed. The district court concluded that there is little expressive value in a numeric "like" count. Order 28. Plaintiff points to no authority to the contrary. Mot. 13-14. Even if a "like count" were expressive, the district court correctly held that the default setting regarding such counts is likely content-neutral and likely satisfies intermediate scrutiny. Order 28-29. The requirement is motivated by an important interest (protecting minors from harms to self-esteem and mental health from fixating on the number of "likes" they receive) and minimally restrictive (because the reactions themselves are still available). Plaintiff does not engage with the

12

district court's reasoning on that point. Mot. 13-14; *Lewis v. Andes*, 95 F.4th 1166, 1181 n.7 (9th Cir. 2024) (arguments not raised in opening brief are forfeited).

The district court also concluded that section 27002(b)(5)'s "private mode" default setting is likely not particularly restrictive because a minor can still speak to any user she wishes if that user requests to connect and the minor accepts. Order 29. Nor does SB976 prevent minors from initiating contact with other users. Plaintiff cites no cases to support its assertion that the default private-mode setting violates the First Amendment. Mot. 14. Nor could it; the Supreme Court has upheld restrictions on unsolicited approaches that, like here, leave open the option for individuals to accept them if they wish. *See Hill v. Colorado*, 530 U.S. 703, 726-27 (2000).

### B.    Plaintiff's "Content-Based" and "Speaker-Based" Arguments Fail.

Even assuming Plaintiff has shown that addictive feeds are expressive, *but see supra* at 7-8, SB976 is content-neutral with respect to such feeds and thus subject to (at most) intermediate scrutiny. *See* Order 23-26. As this Court recently held en banc, "[a] regulation may remain content neutral despite touching on content to distinguish between classes or types of speech . . . so long as it does not discriminate on the basis of viewpoint or restrict discussion of an entire topic." *Project Veritas v. Schmidt*, __ F.4th __, No. 22-35271, 2025 WL 37879, at *12 (9th Cir. Jan. 7, 2025) (en banc) (quoting *City of Austin v. Reagan Nat'l*

*Advertising of Austin, LLC*, 596 U.S. 61, 72 (2022)). A law like SB976 that "does 'not inherently present the potential for becoming a means of suppressing a particular point of view'" is content-neutral. *Id.* at *13 (quoting *City of Austin*, 596 U.S. at 72).

Plaintiff argues that SB976 must be content-based because it covers "social media platforms" as defined in California Business and Professions Code section 22675(e)(1)(A). Mot. 15. But SB976 is not defined by or limited to such platforms, § 27000.5(b)(1), and whether they are covered depends on whether they have addictive feeds, not any viewpoints or topics. Plaintiff further claims that SB976 singles out websites that make "editorial choices to foster social interaction." Mot. 15. But SB976 does not restrict editorial choices, and its focus on addictive feeds does not discriminate based on viewpoints or topics, making it content-neutral. *Project Veritas*, 2025 WL 37879, at *13.

Nor does the fact that SB976 covers feeds of media generated or shared by its users, but not feeds of media generated by a platform itself, render SB976 content-based. SB976 makes no distinctions based on the viewpoints or topics within those feeds. *Id.* (law distinguishing between the act of recording conversations involving law-enforcement officers versus recording conversations that did not was content-neutral; distinction applied "regardless of what the conversation is about"); *see*

14

*also id.* at *16 (First Amendment "bears less heavily when speakers assert the right to make other people's speeches").

And while SB976 excludes websites where user interactions are limited to commercial transactions or consumer reviews, that does not render it content-based either. SB976 was enacted to address harms caused to children by addictive engagement features; its distinction between types of websites is informed by that content-neutral goal, not an intent to discriminate based on views or opinions. A law that distinguishes between "classes or types of speech—such as speech that constitutes solicitation"—is content-neutral if, as here, it does not discriminate based on "*the ideas or views expressed*[.]" *Id.* at *12.

Plaintiff's claim that SB976 is improperly speaker-based merely recasts and repeats its content-based arguments. Mot. 16. It is only when the government has "left unburdened those speakers whose messages are in accord with its own views" that a law is viewed with suspicion. *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 778 (2018). "[P]rovisions [that] distinguish between speakers" but "are not a subtle means of exercising a content preference" are not subject to strict scrutiny. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 645 (1994); *accord Project Veritas*, 2025 WL 37879, at *13. Plaintiff's content-based and speaker-based arguments provide no basis for enjoining SB976.

15

### C. SB976 Satisfies Intermediate or Strict First Amendment Scrutiny.

Regardless, SB976 satisfies either intermediate or strict scrutiny. It meets a compelling state interest. Plaintiff claims that the evidence before the district court was insufficient to support SB976's interest in protecting minors by regulating addictive feeds. Mot. 17. But here, the Legislature identified an actual problem in need of solving, which SB976's title, findings, and history address—a problem independently supported by unrebutted declarations from experts in the field. *Supra* at 2-4. In any event, the Supreme Court has not required any particular quantum of proof to establish a substantial or compelling interest. Indeed, the Court has found interests to be compelling under strict scrutiny without requiring specific evidentiary support. *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 447 (2015); *cf. Project Veritas*, 2025 WL 37879, at *15-17 (finding on intermediate scrutiny that government's interest was significant and law was narrowly tailored at motion-to-dismiss stage without requiring evidentiary support).

Plaintiff dismisses the State's evidence of a compelling interest, citing *Brown* for the proposition that the State's interest must be supported by evidence of causation, not correlation. Mot. 17. First, *Brown* involved a *permanent* injunction, entered after full discovery and summary judgment, in a strict-scrutiny posture. Second, as the district court concluded, the State provided evidence of "large observational studies that show correlation" *and* "smaller experimental studies that

16

show causation." Order 27. That conclusion is well-supported by the factual record in this case, and Plaintiff points to no facts that would cast doubt on the district court's preliminary assessment at this juncture. *See*, *e.g.*, Ex. 2 ¶ 38 (evidence supporting harm to minors from certain features "necessarily impl[ies] causation").

Plaintiff also claims that SB976 is not the least restrictive means of accomplishing the State's interest. Mot. 18. But the least-restrictive-means standard applies to strict scrutiny. *Project Veritas*, 2025 WL 37879, at *17. Plaintiff does not address the intermediate-scrutiny standard, forfeiting any argument on that point. *Lewis*, 95 F.4th at 1181 n.7.

 In any event, SB976 would satisfy strict scrutiny, if that standard were to apply. The State's compelling interest is to protect the physical and mental health of minors, which includes limiting their access to addictive feeds. SB976 is narrowly tailored to that interest; it places limits only in connection with such feeds without preventing minors from signing up for any site, viewing any content, searching for any specific media, or subscribing to any creators they want.

Plaintiff argues that SB976 is not narrowly tailored because parents have other tools to oversee their children online. Mot. 18. But the options Plaintiff highlights are neither "less restrictive alternative[s]," nor do they "serve the Government's purpose." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000). The parental controls Plaintiff mentions—such as routers that block

17

access to entire websites, Mot. 4—restrict *more* access to the internet than SB976, not less. Plaintiff also does not argue that such controls address the addictive feeds SB976 targets. And even assuming SB976 overlaps with some existing parental-monitoring tools, that is not dispositive. Strict scrutiny requires only that a content-based restriction "be narrowly tailored, not that it be 'perfectly tailored.'" *Williams-Yulee*, 575 U.S. at 454.

Plaintiff next argues that SB976 is overinclusive because it is not limited to websites "particularly harmful to minors" or "particularly likely to be accessed by minors." Mot. 18. But SB976 does not target "harmful" websites or websites that focus on minors. A website that uses an addictive feed is harmful to minors irrespective of its content. Nor is SB976 insufficiently tailored because it does not account for minors' ages and maturity levels. *Id.* The State's interest in safeguarding the health of minors applies as much to 13-year-olds as it does 17-year-olds. *See* Ex. 2 ¶¶ 20, 30.

Nor is SB976 insufficiently tailored, or underinclusive, because it allows minors to access addictive feeds with parental consent. Mot. 19. The concept of underinclusiveness addresses "whether the government is in fact pursuing the interest it invokes[.]" *Williams-Yulee*, 575 U.S. at 448 (citing *Brown*, 564 U.S. at 802). In *Brown*, the Court analyzed underinclusiveness only because it was skeptical that a law banning violent video games was motivated by a sincere need.

18

564 U.S. at 799-802. A law is not invalid because it does not reach all possible targets; after all, it is "counterintuitive to argue that a law violates the First Amendment by abridging *too little* speech." *Williams-Yulee*, 575 U.S. at 448.

### D. This Case is Distinguishable from Other Recent District Court Decisions.

Finally, Plaintiff relies on five readily-distinguishable district-court cases. In *NetChoice, LLC v. Reyes*, the District of Utah expressly did not reach whether the plaintiff met its facial burden of showing an impact on its speech; the defendant apparently conceded the point. No. 2:23-cv-00911-RJS-CMR, 2024 WL 4135626, at *3 (D. Utah Sept. 10, 2024), *appeal docketed*, No. 24-4100 (10th Cir. Oct. 11, 2024). The laws at issue in other cases targeted content or contained sweeping bans on entire social media platforms. *See NetChoice, LLC v. Fitch*, No. CV 24-170-HSO (BWR), 2024 WL 3276409, at *2 (S.D. Miss. July 1, 2024), *appeal docketed*, No. 24-60341 (5th Cir. July 5, 2024); *NetChoice, LLC v. Yost*, 716 F.Supp.3d 539, 546-47 (S.D. Ohio 2024); *NetChoice, LLC v. Griffin*, No. CV 23-05105, 2023 WL 5660155, at *1 (W.D. Ark. Aug. 31, 2023).

### III. PLAINTIFF LACKS ASSOCIATIONAL STANDING TO PURSUE AN AS-APPLIED FIRST AMENDMENT CLAIM

Plaintiff must make "a clear showing" of standing at the preliminary injunction stage. *LA All. for Hum. Rts. v. County of L.A.*, 14 F.4th 947, 956 (9th Cir. 2021). Unlike facial claims, as-applied claims concern "the application of the

19

statute to a specific factual circumstance." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). An association lacks standing to represent its members if its as-applied claims "require[] the participation of [its] members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). And a claim requires participation of members if it is "not common to the entire membership, nor shared by all in equal degree," *Warth v. Seldin*, 422 U.S. 490, 515 (1975), "requir[ing] an 'ad hoc factual inquiry' for each member," *Ass'n of Christian Sch. Int'l v. Stearns*, 678 F. Supp. 2d 980, 986 (C.D. Cal. 2008), *aff'd*, 362 F. App'x 640 (9th Cir. 2010).

Here, Plaintiff bases its as-applied claim on SB976's potential effects on five members: Google, which owns YouTube; Meta, which owns Facebook; Nextdoor; Pinterest; and X. But determining whether and how much SB976 impacts those members requires ad hoc factual inquiries. Plaintiff must show, for example, whether and to what degree SB976 impacts the "'speech' and 'nonspeech' elements" of each platform's feeds. *See United States v. O'Brien*, 391 U.S. 367, 376 (1968). A feed relying heavily on content moderation may, for example, be analyzed differently than one "respond[ing] solely to how users act online." *Moody*, 603 U.S. at 736 n.5. Indeed, Plaintiff's evidence—declarations from YouTube and Meta executives—underscores the fact that SB976 will affect Plaintiff's members differently. *See*, *e.g.*, Ex. E ¶ 60 (potential effect on

20

Facebook's "marked safe" alerts); Ex. D ¶ 45 (potential effect on YouTube's ability to "let [users] know when there are new videos and updates from [their] favorite channels"). Moreover, the fact-intensive, necessary inquiry into how each platform's feeds actually work distinguishes this case from those in other circuits where the need for "limited" member participation did not preclude associational standing. *See Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1306 (11th Cir. 2010); *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 552-53 (5th Cir. 2010).

Regardless, it is unclear whether Plaintiff's Complaint even states an as-applied claim. Plaintiff argues that because it seeks declaratory relief, its members need not participate. Mot. 20-21. But the relief it seeks is incompatible with an as-applied claim. A complaint seeking relief "reach[ing] beyond the particular circumstances of these plaintiffs" must be analyzed as a *facial* challenge. *Doe v. Reed*, 561 U.S. 186, 194 (2010). Plaintiff seeks declarations "that California Senate Bill 976 is unlawful" and that SB976 "violate[s] the First Amendment to the Constitution." Complaint 31, 32. The voiding of a statute would reach far beyond Plaintiff's five purportedly impacted members.

## IV. PLAINTIFF FAILS TO ESTABLISH THAT THE REMAINING INJUNCTION FACTORS WARRANT EXTRAORDINARY RELIEF

Even if Plaintiff demonstrated a likelihood of success on its First Amendment claims, that would not mean it has automatically shown a likelihood of irreparable

harm. *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011). Plaintiff points to costs it claims it will incur to comply with SB976. Mot. 21-22. But "ordinary compliance costs are typically insufficient to constitute irreparable harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005); *see N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, 460 F. Supp. 3d 1030, 1047 (D. Mont. 2020). That rule protects "the government's interest in being free to regulate without undue concern about onerous liabilities." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 206 (3d Cir. 1990).

Further, Plaintiff's alleged costs are too conclusory or speculative to credit. *See Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984). For instance, one declarant speaks of "extremely costly" compliance measures and "more investment" in cybersecurity. Ex. C ¶ 29, 30.  But Plaintiff does not quantify those costs or describe the measures required. In fact, compliance with SB976's requirements is feasible and non-disruptive because it can be done with technology already in use. Ex. 3 ¶ 50. The law's addictive feed requirements involve "simply modifying the algorithms that are already being used to curate content." *Id.* ¶ 51. That work "should not be particularly onerous"; indeed, some platforms "already offer users the choice over how to algorithmically curate their feeds." *Id.* SB976's other requirements are similarly feasible. *Id.* ¶ 53.

The equities and public interest likewise balance in favor of denying Plaintiff's motion. Enjoining any provisions of SB976 the district court has found constitutional would harm the public interest by hindering the State's ability to protect the mental and physical health of minors—a vital government interest. *See* Order 26.

## CONCLUSION

This Court should deny Plaintiff's request for an injunction pending appeal.

Dated:  January 13, 2025                Respectfully submitted,

                                  *s/Christopher J. Kissel*
_____

ROB BONTA
  *Attorney General of California*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
LARA HADDAD
  *Supervising Deputy Attorney General*
JENNIFER E. ROSENBERG
SHIWON CHOE
CHRISTOPHER J. KISSEL
  *Deputy Attorneys General*

23

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the length limits permitted by Federal Rule of Appellate Procedure 27. The brief is 5187 words excluding the portions exempted by Rule 32(f). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Dated: January 13, 2025          */s/ Christopher J. Kissel*
                                  CHRISTOPHER J. KISSEL

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2025, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: January 13, 2025          _/s/ Christopher J. Kissel_
                                 CHRISTOPHER J. KISSEL