**No. 25-146**

# In the United States Court of Appeals for the Ninth Circuit

NETCHOICE,
*Plaintiff-Appellant*,

*v.*

ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF CALIFORNIA,
*Defendant-Appellee*.

On Appeal from the United States District Court for the Northern District of California
Civil Action No. 5:24-cv-07885-EJD

## APPELLANT'S REPLY IN SUPPORT OF MOTION FOR INJUNCTION PENDING APPEAL
**Relief Requested by February 1, 2025**

Joshua P. Morrow
LEHOTSKY KELLER COHN LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701

Jared B. Magnuson
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305

Scott A. Keller
Steven P. Lehotsky
Jeremy Evan Maltz
Shannon Grammel
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW
Suite 700
Washington, DC 20001
scott@lkcfirm.com
(512) 693-8350

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**


Table of Authorities ........ ii

Argument ........ 1

I. California Senate Bill 976's restrictions on social media websites' personalized feeds and minors' default settings violate the First Amendment. ........ 1

A. The personalized feeds on websites restricted by the Act are expressive and protected by the First Amendment. ........ 1

B. SB976's requirements trigger strict scrutiny in multiple ways. ........ 4

1. Parental-consent requirements for minors to access personalized feeds violate the First Amendment. ........ 4

2. SB976's default limitations on minors' accounts violate the First Amendment. ........ 5

3. SB976's speech restrictions discriminate based on content and speaker. ........ 7

C. SB976's speech restrictions fail any form of heightened First Amendment scrutiny. ........ 8

D. NetChoice has satisfied the facial-challenge standard. ........ 10

E. NetChoice has standing to raise as-applied First Amendment claims on behalf of its members. ........ 11

II. NetChoice meets all the remaining factors for an injunction pending appeal. ........ 12

Conclusion ........ 12

Certificate of Service ........ 14

Certificate of Compliance ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Ass'n of Realtors v. HHS*,
594 U.S. 758 (2021) .......... 12

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) .......... 10

*Borrero v. United Healthcare of N.Y., Inc.*,
610 F.3d 1296 (11th Cir. 2010) .......... 11

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) .......... 4, 8, 9

*Citizens United v. FEC*,
558 U.S. 310 (2010) .......... 12

*FCC v. Pacifica Found.*,
438 U.S. 726 (1978) .......... 5

*Ginsberg v. New York*,
390 U.S. 629 (1968) .......... 5

*Hill v. Colorado*,
530 U.S. 703 (2000) .......... 6

*Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Boston*,
515 U.S. 557 (1995) .......... 2, 5

*Meinecke v. City of Seattle*,
99 F.4th 514 (9th Cir. 2024) .......... 1

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) .......... 1, 2, 3, 5, 10

*NetChoice, LLC v. Reyes*,
2024 WL 4135626 (D. Utah Sept. 10, 2024) ........................................6, 8

*Packingham v. North Carolina*,
582 U.S. 98 (2017) ........................................................................2, 7

*Project Veritas v. Schmidt*,
2025 WL 37879 (9th Cir. Jan. 7, 2025) ..................................................7

*Reno v. ACLU*,
521 U.S. 844 (1997) ..........................................................................5

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ..........................................................................6

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002) ..........................................................................9

*Video Software Dealers Ass'n v. Schwarzenegger*,
401 F. Supp. 2d 1034 (N.D. Cal. 2005) ..................................................9

*X Corp. v. Bonta*,
116 F.4th 888 (9th Cir. 2024) ............................................................10

**Statutes**

Cal. Health & Safety Code § 27000.5 ..................................................2, 7

Cal. Health & Safety Code § 27001 ..................................................1, 12

Cal. Health & Safety Code § 27002 ..........................................1, 5, 6, 12

Defendant agrees with the district court that personalized compilations of protected speech on social media websites (*i.e.*, "feeds") are not "expressive," and thus unprotected by the First Amendment. Opp. 7-11. That radical view could allow the State to ban personalized feeds—*even for adults*. For that reason, it is foreclosed by binding precedent. So, NetChoice has at least a "colorable claim" that Defendant's arguments are flawed. *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). This Court should enjoin pending appeal enforcement of California Senate Bill 976 ("SB976"), Cal. Health & Safety Code §§ 27001 and 27002(b)(2)-(5), on or before February 1, 2025.

## ARGUMENT

The parties agree that the "standard for injunction pending appeal is 'similar' to [that for a] preliminary injunction." Opp. 6. Here, an injunction requires "colorable claim[s]" the Act violates the First Amendment. *Meinecke*, 99 F.4th at 521 (cleaned up). NetChoice satisfies that standard. Many of Defendant's arguments to the contrary were addressed in NetChoice's Motion.

### I. California Senate Bill 976's restrictions on social media websites' personalized feeds and minors' default settings violate the First Amendment.

#### A. The personalized feeds on websites restricted by the Act are expressive and protected by the First Amendment.

Defendant's main theme is that personalized feeds are not "expressive." Opp. 7-11. That argument misreads *Moody v. NetChoice, LLC*, 603 U.S. 707

(2024), and defies the record. Further, it would allow the government to ban personalized feeds outright (including for adults).

The "feeds" restricted by the Act are curated collections of *protected speech*. Decades of precedent, including *Moody*, establish this straightforward principle. Such feeds contain statements from "elected representatives," "debate[s]" about "religion and politics," "vacation photos," "tips on entrepreneurship," and myriad other topics that satisfy services' editorial policies. *Packingham v. North Carolina*, 582 U.S. 98, 104-05 (2017). Beyond their baseline expressive nature, the ways that covered websites organize personalized feeds can reflect "what kinds of speech . . . are [] worthy of promotion." *Moody*, 603 U.S. at 736 n.5. Such curation is itself speech, even if there is not "a narrow, succinctly articulable message." *Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995).

Furthermore, SB976 restricts *precisely* the kinds of feeds that *Moody* confirmed are protected. It applies where "multiple pieces of media generated or shared by users are . . . recommended, selected, or prioritized for display to a user based . . . on information provided by the user." § 27000.5(a). Under *Moody*, these are protected feeds "based on a user's expressed interests and past activities." 603 U.S. at 734-35.

Contrary to Defendant's assertion that *Moody*'s recognition of First Amendment protection for certain services stripped others of their protections (Opp. 10-11), *Moody* held that feeds "similar" to Facebook and YouTube feeds are likewise protected. 603 U.S. at 719, 731. Thus, *Moody*'s

discussion about how certain services curate content—through, *e.g.*, "personaliz[ation]"—confirmed that those practices are protected on *any* service. *Id.* at 734-35.

Defendant also asserts that "*Moody* was unanimous in rejecting" the argument "that 'personalized feeds' always trigger First Amendment scrutiny." Opp. 9. Not so. *Moody* said only that regulation of user activity on certain services *beyond* "social media" *might* receive a different analysis. *E.g.*, 603 U.S. at 725 ("how a ride-sharing service . . . runs"). But the Court identified personalized feeds on "social media" as plainly protected. *E.g.*, *id.* at 740. Again, that is precisely what SB976 restricts and what the record shows that NetChoice's members do: "use their Standards and Guidelines to decide . . . how the display will be ordered and organized." *Id.* at 740; *see* Mot. 11 (collecting record evidence). The record likewise demonstrates that the feeds here do not "respond solely to how users act online." *Moody*, 603 U.S. at 736 n.5; Mot. 11. Although Defendant disputes that all this evidence is legally sufficient, Defendant does not explain why or contest its accuracy. Nor does Defendant explain why such hypothetical feeds should be unprotected by the First Amendment. Mot. 12.

At bottom, Defendant contends that collections of protected speech are presumptively unprotected. *Moody* specifically foreclosed this attempt to restrict personalized feeds. And Supreme Court precedent generally rejects the "unprecedented and mistaken" approach of imposing a "wholly new

category" of "regulation that is permissible only for speech directed at children." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 794 (2011).

**B. SB976's requirements trigger strict scrutiny in multiple ways.**

**1. Parental-consent requirements for minors to access personalized feeds violate the First Amendment.**

Defendant severely discounts minors' First Amendment rights. But Defendant cannot dispute that "the state" lacks "power to *prevent children from hearing* . . . anything *without their parents' prior consent*." *Id.* at 795 n.3 (emphasis added).

In *Brown*, minors had the right to buy violent games without parental consent, notwithstanding concerns about the games' purported harms. *Id.* at 802. Here, minors have the First Amendment right to access personalized feeds on social media. That is why courts nationwide have enjoined laws that would limit minors' access to social media—and the feeds on them. Opp.19. Defendant's contrary arguments would severely limit minors' rights.

*Brown*'s holding was not limited to laws imposing "content restrictions." Opp.11; *see Brown*, 564 U.S. at 795 & n.3.[1] *Brown* would not have come out differently had California banned minors from purchasing *all* video games without parental consent, or prohibited game stores from suggesting games to minors.

---

[1] SB976 imposes a content restriction, in any event. *See infra* p. 7; Mot. 14-15.

Defendant's other efforts to discredit *Brown* fail. Defendant cites *Ginsberg v. New York*, 390 U.S. 629 (1968) (at Opp. 11-12), which concerned minors' access to *pornography—i.e.*, speech *unprotected for minors*. But Defendant cannot argue that SB976 restricts only *unprotected speech*. Defendant is equally wrong to say that the State has authority to restrict content on the Internet as if it were radio. Opp.11-12 (citing *FCC v. Pacifica Found.*, 438 U.S. 726, 750 (1978)). Radio and broadcast television precedents "provide no basis for qualifying the level of First Amendment scrutiny that should be applied to the Internet." *Reno v. ACLU*, 521 U.S. 844, 871 (1997).

Defendant argues that minor users suffer no harm from SB976's parental-consent requirement because NetChoice has "not shown that SB976 impacts expressive activity" and that minors can still access content. Opp. 8. But just as "expressive activity includes presenting a curated compilation," the Constitution protects users' right to receive that "*distinctive expressive offering*." *Moody*, 603 U.S. at 728, 738 (emphasis added). Surely, the City of Boston would have violated the Constitution if it precluded minors from watching the parade in *Hurley* without parental consent. *Id.* at 728-30.

**2. SB976's default limitations on minors' accounts violate the First Amendment.**

The parties agree that the legality of the default restrictions on personalized feeds, § 27002(b)(2) and (4), largely rises and falls with the arguments above. *See* Mot.12; Opp.12. Defendant's arguments supporting SB976's two remaining default requirements fail.

The default setting limiting a minor's "ability to view the number of likes or other forms of feedback," § 27002(b)(3), should be enjoined. Defendant says this provision does not implicate the First Amendment because "there is little expressive value in a numeric 'like' count." Opp.12 (citing district court). But "the creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). That is especially so here, as the restricted information is true and conveys how many people have reacted publicly to a minor user's speech. The State could not ban the publication of how many copies of a book were sold either.[2]

The "private mode" default setting, § 27002(b)(5), should likewise be enjoined. Here, Defendant seems to agree that this provision implicates the First Amendment, but just says that it is "not particularly restrictive." Opp.13. Defendant does not respond to NetChoice's tailoring arguments. Instead, Defendant suggests this provision is a permissible "restriction[] on unsolicited approaches." Opp.13 (citing *Hill v. Colorado*, 530 U.S. 703, 726-27 (2000)). But it actually "burdens minors' ability to share and receive protected speech" by default. *NetChoice, LLC v. Reyes*, 2024 WL 4135626, at *16 n.169 (D. Utah Sept. 10, 2024) (citation omitted).

---

[2] Contrary to Defendant's assertion (Opp.12-13), NetChoice *did* respond to the district court's analysis. *See* Mot.12-13.

### 3. SB976's speech restrictions discriminate based on content and speaker.

SB976 restricts speech on the basis of content and speaker, twice triggering strict scrutiny.

Most obviously, SB976 excludes websites that present or facilitate "*consumer reviews* of products, sellers, services, events, or places." § 27000.5(b)(2)(A) (emphasis added). In other words, if the "topic discussed," *Project Veritas v. Schmidt*, 2025 WL 37879, at *12 (9th Cir. Jan. 7, 2025) (citation omitted), on a website is "consumer reviews," § 27000.5(b)(2)(A), the websites can use whatever feeds they choose. Websites that are devoted to different types of content, however, must comply with the Act.

Defendant contends that these content-based and speaker-based distinctions are "between types of websites." Opp. 15. But the Act uses *content-based* criteria to choose different websites for regulation. Strict scrutiny thus applies.

At a minimum, restrictions on access to "social media" websites "prevent the user from engaging in the legitimate exercise of First Amendment rights," triggering heightened First Amendment scrutiny. *Packingham*, 582 U.S. at 108.

### C. SB976's speech restrictions fail any form of heightened First Amendment scrutiny.

Defendant has failed to show that the Act satisfies any form of heightened First Amendment scrutiny.[3]

To begin, Defendant has not presented sufficient evidence demonstrating the necessary "caus[al]" relationship between social media and harms to minors. *Brown*, 564 U.S. at 800. With a similar record, *Reyes* concluded that there was not "evidence establishing a clear, causal relationship between minors' social media use and negative mental health impacts." 2024 WL 4135626, at *12. Defendant does not dispute that most of the evidence is, at most, correlational. *See* Mot. 17. But Defendant repeats the district court's conclusion that some "smaller experimental studies . . . show causation." Mot. Ex. A 27. Those studies do not purport to show that *personalized feeds* cause harms. So Defendant overstates what these studies actually show—certainly not a strong "causal" relationship as contemplated by *Brown*. 564 U.S. at 799. In any event, *Brown* invalidated California's parental-consent requirement for violent video games where "nearly all"—but not all—"of the research [was] based on correlation." *Id.* at 800 (cleaned up). In other words, *Brown* contemplated that *some* evidence of causation will not be enough. Defendant tries to side-step *Brown* by saying that case involved "full

---

[3] Defendant contends that NetChoice waived arguments that SB976 fails intermediate scrutiny. Opp. 17. But NetChoice argued that "SB976 cannot satisfy . . . any form of heightened scrutiny." Mot. 16.

discovery." Opp. 16. But *Brown* began with a preliminary injunction. *Video Software Dealers Ass'n v. Schwarzenegger*, 401 F. Supp. 2d 1034, 1048 (N.D. Cal. 2005). That underscores why an injunction is warranted: *Before* California can restrict access to speech, Defendant must muster the necessary record.

At any rate, Defendant has failed to demonstrate proper tailoring.

Whatever the level of scrutiny, the government must at least "consider[] . . . alternatives." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002). Here, California ignored the range of private alternatives to governmental restriction. *Brown*, 564 U.S. at 803. Defendant dismisses those alternatives because some of them *might* "restrict *more* access to the internet." Opp. 18. That is not true of the parental tools that NetChoice's members offer. *See* Mot. 4 (citing record). Regardless, that is a permissible private choice that parents have discretion to make.

Furthermore, SB976's regulatory scope is underinclusive because it does not address all the harms that the State purports to target. Defendant's justification for SB976—that "a website that uses an addictive feed is harmful to minors irrespective of its content," (Opp. 18)—cannot be squared with the Act's *express exclusion* for websites presenting consumer reviews via the same kind of "feeds." Equally, Defendant's declarants often discuss the effects of other technology and functions left unregulated by SB976. Opp. Ex. 2 ¶¶ 35, 56, 60; Opp. Ex. 1 ¶¶ 39, 68 (smartphones); *id.* ¶¶ 63-64 (infinite scroll and autoplay). SB976's restriction of personalized feeds alone means it is not tailored to address those purported harms.

### D. NetChoice has satisfied the facial-challenge standard.

A facial challenge is proper where "the pertinent facts in [the case] are the same across the board": Here, it is "true in every case" that the Act imposes unconstitutional restrictions on the dissemination of, and access to, protected speech, failing heightened First Amendment scrutiny. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618 (2021) ("*AFP*"); *accord X Corp. v. Bonta*, 116 F.4th 888, 899 (9th Cir. 2024). *Brown* is illustrative: California's parental-consent requirement for violent video games was facially invalid even though video game stores and developers may have differing business practices, video games differ (*e.g.*, graphics and subject matter), and numerous other *irrelevant* distinctions.

Defendant's example of differences among online services proves NetChoice's point. Defendant says that "SB976 will affect Plaintiff's members differently" by pointing to different kinds of notifications. Opp. 20-21 ("marked safe" notifications versus updates from followed creators). Of course, the district court properly enjoined SB976's notifications requirements. But whether websites convey different protected messages in notifications—or in feeds—is not a "pertinent" difference to the analysis. *AFP*, 594 U.S. at 618. A prohibition on all speech would be facially invalid, even though people talk about, *e.g.*, sports and politics in different measures.

Nor does this Court need to inquire into SB976's application to far-flung "functions" on regulated websites. *Contra* Opp. 7. Rather, the affected "functions," *Moody*, 603 U.S. at 716, are identified by SB976: personalized feeds *as*

*defined by SB976*, feedback counts, and the visibility of minors' accounts. *See* Mot. 5-6, Opp. 3-4. Those are precisely the "functions" that the parties have addressed.

Defendant—who is charged with enforcing the Act—suggests there is some uncertainty about "what the statute covers." Opp. 7-8 (citation omitted). But Defendant does not contend that SB976 applies to services for which *Moody* had questions about protected editorial discretion. *See* Mot. 4-5. Nor can he: Defendant's (and the district court's) justifications for SB976 are laser-focused on social media websites, and NetChoice members specifically. *E.g.*, Opp. Ex.1 ¶ 57, Opp. Ex.3 ¶¶ 20-22, 33, 51. Those are the same websites that NetChoice has identified as engaged in expressive curation. Compl. ¶ 4; Mot. 3.

### E. NetChoice has standing to raise as-applied First Amendment claims on behalf of its members.

Defendant's assertion that NetChoice lacks standing to bring as-applied claims on behalf of its regulated members rests on the notion that this case requires service-by-service analysis. That is wrong for reasons NetChoice has explained. *See supra* pp. 10-11; Mot. 19-21. In addition, Defendant does not explain why any service-by-service analysis would require "excessive participation" of members. *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1306 (11th Cir. 2010). If any discovery is necessary, it can be conducted in this as-applied challenge.

NetChoice's requested relief is not "incompatible" with NetChoice's as-applied claim. Opp. 21. NetChoice asserted both facial and as-applied challenges, asking for an injunction for its "members." *See* Compl. ¶¶ 70-71, p. 32. Regardless, "the distinction between facial and as-applied challenges" does not "control the pleadings." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010).

## II. NetChoice meets all the remaining factors for an injunction pending appeal.

NetChoice members' First Amendment harms suffice for irreparable harm. Mot. 21-22. Likewise, their unrecoverable compliance costs are irreparable injury under Supreme Court precedent that supersedes all Defendant's purportedly contrary caselaw. *Compare Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 765 (2021), *with* Opp. 21-22.

Any potential harm to Defendant is minimal here. The Court is primed to review this case expeditiously: NetChoice's opening merits brief is due January 30, 2025. Before Defendant can be allowed to enforce SB976 against NetChoice members, there should be full appellate process.

## CONCLUSION

This Court should enjoin Defendant from enforcing §§ 27001 and 27002(b)(2)-(5) against NetChoice members pending appeal.

DATED: January 20, 2025

Respectfully submitted,

*/s/ Scott A. Keller*
Scott A. Keller
Steven P. Lehotsky
Jeremy Evan Maltz
Shannon Grammel
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW
Suite 700
Washington, DC 20001
scott@lkcfirm.com

Joshua P. Morrow
LEHOTSKY KELLER COHN LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
(512) 693-8350

Jared B. Magnuson
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305

*Counsel for Plaintiff-Appellant*

## Certificate of Service

On January 20, 2025, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Federal Rule of Appellate Procedure 25(a)(5); and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Scott A. Keller*
Scott A. Keller

## Certificate of Compliance

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) and the limits of Circuit Rule 27-1(d) because it contains 2598 words, excluding the parts exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word (the same program used to calculate the word count).

*/s/ Scott A. Keller*
Scott A. Keller